UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| STRAIGHT THROUGH PROCESSING INC., <br><br> Plaintiff, <br><br> v. <br><br> AMERICERT INC., ROBERT MAILLET, and JANET MAILLET, <br><br> Defendants. | No. C05-995Z <br><br> ORDER |

This matter comes before the Court on a Motion to Dismiss for Lack of Personal Jurisdiction by Defendants Robert and Janet Maillet, docket no. 29, and Defendants' Motion for Stay of Discovery Pending Motion to Dismiss, docket no. 41. The Court has reviewed the briefs and supporting documents, and hereby DENIES Defendants' Motion to Dismiss for Lack of Personal Jurisdiction, docket no. 29, and STRIKES AS MOOT Defendants' Motion for Stay of Discovery Pending Motion to Dismiss, docket no. 41.[1]

---

[1] The Court previously stayed the case against Defendant AmeriCERT pursuant to 11 U.S.C. § 362 after being notified of bankruptcy proceedings in New Hampshire. See Minute Order, docket no. 22.

ORDER 1−

In December 2001, Defendant Robert Maillet agreed to provide consulting services to the Antigua Barbuda Investment Bank regarding financial services the Bank was considering providing in concert with Antigua Commercial Bank. See Answer, docket no. 5, at 9. Ultimately, the banks agreed to form the corporation that is Plaintiff in this case: Straight Through Processing, Inc. ("STP"). Compl., docket no. 1, ¶¶ 6-8. Prior to incorporation, Maillet provided consulting services regarding hardware and software necessary for STP's operations as a "Financial Services Application Services Provider" ("FS-ASP"). Id. ¶ 10. Maillet and AmeriCERT became involved with STP because Maillet represented that his Washington corporation, AmeriCERT, could obtain hardware and software at highly discounted rates available to some U.S. corporations. Id.; see also Answer, docket no. 5, at 10. Maillet represented that software and hardware would need to be titled in AmeriCERT's name to obtain the discounts. See Answer, docket no. 5, at 3.

> Antigua Commercial Bank and Antigua Barbuda Investment Bank provided funds that STP utilized to purchase hardware and software for use by STP at very deep discounts valued in excess of $1,000,000. Such discounts could only be obtained if the purchases were made by AmeriCERT, Inc. and software licenses were held by AmeriCERT, Inc. as a registered "developer" in the Sun Developer Connection StartUp Essentials Program . . .

Id. The banks and Maillet agreed that AmeriCERT (along with title to the software and hardware) would ultimately be absorbed by STP in exchange for shares in STP equal to the value of the discounts. Id. The banks and STP purchased hardware and software through AmeriCERT, but directly paid the vendors that supplied the equipment. Compl., docket no. 1, at ¶ 14. The majority of the purchases – in excess of $1,000,000 – were through another Washington corporation, PWI Technologies.

Through February 2005 Maillet was a paid employee of STP. Answer, docket no. 5, at 2. Maillet's duties included the design and installation of the computer system that would allow STP to operate as a financial services application provider. Id. The parties' relationship deteriorated when the parties disagreed over the valuation of Mr. Maillet's interest in STP. STP alleges that it was unable to value Mr. Maillet's interest because he

ORDER  2–

failed to provide documentation necessary to confirm the value of the discounts. Compl., docket no. 1, ¶ 16. Mr. Maillet alleges that STP failed to properly value the discounts – allegedly $1,348,340 – and issue stock in STP valued in that amount. Answer, docket no. 5, at 5.

Maillet contends that the parties' agreement to issue stock in the value of the discounts had an unintended consequence: the value of the discounts was so great that Mr. Maillet would have been the largest shareholder of STP. Maillet Aff., docket no. 30, ¶ 22. STP alleges it was frustrated with the failure of Mr. Maillet to effect the merger. Mr. Maillet alleges that an STP "consultant," Lambert Lewis, contacted him on February 5, 2005, and demanded that he transfer title to the hardware and software without charge. Id. ¶ 23. If he refused, Mr. Lambert said Maillet would "not get off the Island alive," and yelled "I'm ruthless, ruthless." Id. Fearing for his life, Mr. Maillet and his wife immediately left Antigua. Id.

Seeking to enforce the parties' agreement for the transfer of software and hardware titles, STP brought this lawsuit in the Western District of Washington. The parties dispute whether personal jurisdiction exists over Mr. and Mrs. Maillet, and the Maillets have moved to dismiss for lack of personal jurisdiction.

## DISCUSSION

STP must make a prima facie showing of personal jurisdiction to survive the Maillets' motion to dismiss. Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd., 328 F.3d 1122, 1128-29 (9th Cir. 2003). STP must provide evidence that, if believed, would support the Court's exercise of jurisdiction over Mr. and Mrs. Maillet. Id. at 1129. The Court need not accept Plaintiff's bare allegations if the Maillets controvert them with evidence. See AT&T Co. v. Compagnie Bruxelles Lambert, 94 F.3d 586, 588 (9th Cir. 1996). Where no applicable federal statute addresses the issue, a court's personal jurisdiction analysis begins with the "long-arm" statute of the state in which the court sits. Terracom v. Valley Nat.

ORDER  3–

Bank, 49 F.3d 555, 559 (9th Cir. 1995). Washington's long-arm statute extends personal jurisdiction to the broadest reach the United States Constitution permits; the exercise of jurisdiction must comport with due process. Shute v. Carnival Cruise Lines, 783 P.2d 78, 82 (Wash. 1989); Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co., 284 F.3d 1114, 1123 (9th Cir. 2002).

An exercise of jurisdiction over a non-resident defendant (absent consent) is proper where the court has general or specific jurisdiction over the defendant. Bancroft & Masters, Inc. v. Augusta Nat'l, Inc., 223 F.3d 1082, 1086 (9th Cir. 2000). Where a defendant has "substantial" or "continuous and systematic" contacts with the forum state, it is subject to general jurisdiction, and can be haled into court on any action, even one unrelated to its contacts. Id. If a defendant is not subject to general jurisdiction, it may be subject to specific jurisdiction where the action upon which it is sued arises from contacts within the forum state. Id. In either case, the critical factor in determining personal jurisdiction is the extent of the defendant's contacts with the forum state.

The Court must examine the Maillets' contacts with Washington to determine if they support the exercise of either general or specific jurisdiction.[2]

**A.   General Jurisdiction**

A plaintiff asserting general jurisdiction must meet an "exacting standard." Arnold Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 804 (9th Cir. 2004). A defendant is not subject to general jurisdiction unless its contacts are so "substantial or continuous and systematic" that they "approximate physical presence" in the forum state. Bancroft & Masters, 223 F.3d at 1086. General jurisdiction requires a much more substantial connection

---

[2] The Court declines to reach the argument advanced by Plaintiff STP that Mr. Maillet is the alter ego of Defendant AmeriCERT. AmeriCERT is in bankruptcy proceedings and this case is stayed as to AmeriCERT. See Minute Order, docket no. 22. Neither party has briefed the question of whether the Court may consider an alter ego theory for a corporate defendant in bankruptcy; personal jurisdiction exists on other grounds and therefore it is therefore unnecessary to resolve the alter ego question at this point in the litigation.

ORDER 4–

to the forum than does specific jurisdiction. Ballard v. Savage, 65 F.3d 1495, 1500 (9th Cir. 1995). A court must consider "all of the defendant's activities that impact the state, including whether the defendant makes sales, solicits or engages in business, serves the state's markets, designates an agent for service of process, holds a license, has employees, or is incorporated there." Hirsch v. Blue Cross, Blue Shield of Kansas City, 800 F.2d 1474, 1478 (9th Cir. 1986). A mere showing that a defendant has systematic business contacts with the forum is insufficient. Bancroft & Masters, 223 F.3d at 1086.

The facts regarding personal jurisdiction are largely undisputed. Robert and Janet Maillet do not presently reside in Washington, but resided in Washington when AmeriCERT was formed and when Mr. Maillet began his relationship with the banks that formed STP. See Maillet Decl., docket no. 30, ¶¶ 11-18. Mr. and Mrs. Maillet moved to Antigua in January 2002, but Mr. Maillet continued to have substantial contact with Washington State. Mr. Maillet worked through AmeriCERT, his Washington corporation, to procure the software and hardware licenses at issue in this case. AmeriCERT's purchases exceeded $1,000,000. Compl., docket no. 1, ¶¶ 13-14. Mr. Maillet and AmeriCERT made purchases through PWI, another Washington corporation; when he left STP, Mr. Maillet allowed Washington resident Barry Andersen to negotiate with STP on his behalf. See Boyle Decl., docket no. 36, Ex. 3.

The Maillets' contacts with Washington are insufficient to support an exercise of general jurisdiction. The Maillets' contacts were initially substantial, but decreased during Mr. Maillet's relationship with STP such that an exercise of general jurisdiction would be improper. General jurisdiction having not been found, the Court considers specific jurisdiction.

**B. Specific Jurisdiction**

A defendant not subject to general jurisdiction may be subject to specific jurisdiction, where the action sued upon arises from contacts within the forum state. Bancroft & Masters,

ORDER 5–

223 F.3d at 1086. The Ninth Circuit applies a three-part test to determine specific jurisdiction. First, the nonresident defendant must "do some act or consummate some transaction with the forum or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws[.]" Data Disc, Inc. v. Sys. Tech. Assocs., Inc., 557 F.2d 1280, 1287 (9th Cir. 1977). Second, the plaintiff's claim must "arise[] out of or result[] from the defendant's forum-related activities . . . ." Id. Third, the "[e]xercise of jurisdiction must be reasonable." Id. If the plaintiff meets his burden on the first two parts of the test, the burden shifts to the defendant to satisfy the third part by presenting a "compelling case" that the exercise of jurisdiction is unreasonable. Schwarzenegger, 374 F.3d at 802 (citation omitted).

**1.   Purposeful Availment**

Under the first prong of the three-part specific jurisdiction test, a plaintiff must establish that the defendant purposefully availed itself of the privilege of conducting activities in Washington. See, e.g., Harris Rutsky, 328 F.3d at 1130 (citing Haisten v. Grass Valley Med. Reimbursement Fund Ltd., 784 F.2d 1392, 1397 (9th Cir. 1986)). In this case, Mr. Maillet initially directed his activities *from* Washington, and continued to direct his actions towards Washington after moving to Antigua. Maillet's corporation, AmeriCERT, was based in Washington and Washington played host to Mr. Maillet's business activities related to STP. Although Mr. Maillet was not present in Washington for much of the relevant time, he purposefully availed himself of the privilege of doing business in Washington.

**2.   Forum-Related Activities**

Mr. Maillet's activities, related to AmeriCERT, utilized Washington as the forum state. AmeriCERT was a Washington corporation. These activities are sufficient to find that the second prong of the specific jurisdiction test is met. Maillet used his Washington corporation to procure software and hardware from PWI, another Washington corporation.

ORDER   6–

Compl., docket no. 1, ¶¶ 13-14.  In addition, Maillet allowed a Washington resident to negotiate on his behalf, see Boyle Decl., docket no. 36, Ex. 3.  Mr. Maillet's forum-related activities support an exercise of jurisdiction over him.

**3.     Reasonableness**

The third prong asks whether the exercise of jurisdiction would be reasonable.  Data Disc, 557 F.2d at 1287.  The Court considers various factors in determining whether an exercise of jurisdiction over a nonresident defendant satisfies the reasonableness test: (1) the extent of the defendant's purposeful interjection into the forum state's affairs; (2) the burden on the defendant; (3) conflicts of law between the forum and defendant's home jurisdiction; (4) the forum's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the dispute; (6) the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.  Sinatra, 854 F.2d at 1199-1201.  No factor is dispositive, and the Court must balance the seven.  FDIC v. British-American Ins. Co., Ltd., 828 F.2d 1439, 1442 (9th Cir. 1987).  After balancing the factors in this case, the Court concludes that an exercise of jurisdiction is reasonable.

**a.     Extent of Purposeful Interjection**

In view of the purposeful availment prong of the Ninth Circuit test, this issue has been addressed and decided in STP's favor.  Maillet extensively utilized the privileges of doing business in Washington and an exercise of jurisdiction is reasonable on that ground.

**b.     Burdens on Defendant**

The parties dispute which state would be the most favorable location for this proceeding.  Mr. Maillet, a Florida resident, fails to explain why New Hampshire is a better location.  In view of Washington's extensive connection to this case, litigation in Washington is not unreasonably burdensome.

//

//

ORDER  7–

    **c.**    **Extent of Conflict With Sovereignty of Foreign State**

There is no conflict. Washington has a strong interest in adjudicating alleged tortious conduct within its borders.

    **d.**    **Forum State's Interest in Adjudication**

<u>Sinatra</u> holds that states have a greater interest in tort cases than contract cases, 854 F.2d at 1200, and the Court concludes this factor favors adjudication in Washington. Although much of Mr. Maillet's conduct occurred in Antigua, he acted through AmeriCERT, a Washington corporation.

    **e.**    **Most Efficient Judicial Resolution**

This factor favors Washington law. Washington state played host to the activities in question, and Washington law appears likely to apply to at least some of the issues before the Court. The hardware and software were purchased in Washington, and AmeriCERT and PWI were based in Washington. While witnesses and records will be located in various locations, Washington is the most efficient forum for resolution of the dispute. Moreover, it would be inefficient to transfer this case after it has been pending in Washington for over 17 months.

    **f.**    **Convenience and Effectiveness of Relief for Plaintiff**

STP presumably can obtain effective relief in Washington or New Hampshire. However, because the Maillets have waited so long to challenge jurisdiction, and STP's counsel is prepared to proceed in Washington, this factor favors STP.

    **g.**    **Availability of an Alternative Forum**

An alternative forum may exist, but the delay in challenging personal jurisdiction weighs against the reasonableness of transferring this case to an alternative forum.

    **h.**    **Balancing the Seven Factors**

Of the seven factors, the purposeful interjection factor is the most relevant to deciding this prong of the jurisdiction test. The remainder do not demonstrate that litigating this case

ORDER 8–

in Washington is unreasonable. As such, the Court finds that its exercise of jurisdiction would be reasonable. Shute, 897 F.2d at 386.

**4.  Weighing the Three Prongs**

Applying the three-prong Ninth Circuit test, the Court finds that an exercise of jurisdiction over the Maillets is appropriate. Accordingly, the Court DENIES the Maillets' motion to dismiss for lack of personal jurisdiction.[3]

## CONCLUSION

Defendants' Motion to Dismiss for Lack of Personal Jurisdiction or to Transfer, docket no. 29, is DENIED. The Maillets' contacts with Washington were extensive and more than sufficient to justify an exercise of personal jurisdiction over them. Defendants' Motion to Stay Discovery pending Motion to Dismiss, docket no. 41, is STRICKEN AS MOOT.

IT IS SO ORDERED.

DATED this 15th day of November, 2006.

Thomas S. Zilly
United States District Judge

---

[3] Defendants contend in their opening brief that the Court should transfer this case for "improper venue" and forum non conveniens. Defendants' brief contains no analysis on whether venue is proper in the Western District of Washington, and no substantive analysis on the issue of forum non conveniens. See Defs.' Mot., docket no. 29, at 6-7.

ORDER  9–